[L. A. No. 22890.   In Bank.   Mar. 5, 1954.]

GUDRUN S. THOMPSON, as Administratrix, etc., Appellant, v. SHERMAN LACEY, as Administrator, etc., Respondent.

Luce, Forward, Kunzel & Scripps and Edgar A. Luce, Jr., for Appellant.

Gray, Cary, Ames & Frye, Ward W. Waddell, Jr., and Alfred S. Wilkins for Respondent.

CARTER, J.—A judgment of nonsuit, the subject of this appeal, was entered in plaintiff's action for the death of her husband, Virgil T. Thompson, allegedly caused by the negligence or wilful misconduct of Donald Kerns in operating a car in which Thompson was riding. The administrator of the Kerns' estate is defendant, plaintiff having dismissed the action as to defendants Kelley-Moyer Transportation Company and Charles Fogle.

The sole issues are whether Thompson was a guest or passenger in the car being driven by Kerns when Thompson, riding therein, met his death, and, if the former, whether Kerns was guilty of wilful misconduct thus being liable although Thompson was a guest.

No person who as a guest accepts a ride in a vehicle without giving compensation has a right of action for damages against the driver unless he establishes that the damages were caused by the intoxication or wilful misconduct of the driver. (Veh. Code, § 403.) "The designations 'passenger' and 'guest' have been adopted for the purpose of distinguishing a person who has given compensation within the meaning of section 403 of the Vehicle Code from one carried gratuitously." (*Whitmore* v. *French*, 37 Cal.2d 744, 746 [235 P.2d 3].) No question concerning Kerns' negligence is presented.

At the time of the accident Kerns was driving his car with Thompson riding in the front seat with him and Mr. Dreis

in the back seat. In endeavoring to pass a car ahead of him in foggy weather, Kerns' car collided head on with an oncoming truck. Kerns, Thompson and Dreis were employees of Arrowhead and Puritas Water Company and were en route from San Diego to Los Angeles.* Kerns was manager for the company in the San Diego area. Under his supervision were Dreis and Thompson, each of whom was a sales supervisor for a portion of that area; their duty was to supervise the selling and delivery activities of salesmen selling and delivering bottled water, the company's product. Before the day of the accident, Kerns, Thompson and Dreis received notice from the company requesting that they attend a company meeting in Los Angeles of all the branch managers and sales supervisors. The meeting was one of a series of regular monthly meetings inaugurated in 1950 (prior to that time the meetings had been irregular) and it was necessary that all three attend because the matter to be considered was important to them and to the company in their work and its business. While there was no ''set'' policy for transportation of the employees to the meetings, that is, they could come by private car or public transportation, as they chose, the company knew Thompson and Dreis had ridden with Kerns in the latter's car to attend several meetings and did not object. The company reimbursed the employees for expenses incurred in coming to the meetings, including an allowance of 7 cents a mile for the first 500 miles when a private car was used. The employee driving his car to the meeting would get the mileage, and those riding with him would not, which was ''more economic'' for the company as expressed by Swanburg, the company's manager of all branches, and is plainly inferable from the evidence.

We have a situation then in which several employees of a company, in the course of their employment, are riding in the car of one of the employees for the purpose of attending a meeting called by the company in connection with its business. The employee owning the car receives mileage for its use in the employer's business from the employer. Al-

---

*The company is not a party to the action and it may be noted that an employee injured in the course of his employment by the negligence of his employer's agent may recover damages from the agent in a civil action, as the agent is considered a third person or a person other than the employer under the workmen's compensation laws. (*Wallace* v. *Pacific Electric Ry. Co.*, 105 Cal.App. 664 [288 P. 834]; see *Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043]; Lab. Code, § 3852 et seq.)

though it may be small, clearly the owner of the car receives a tangible benefit from the employer. While he would have received the same amount whether or not he carried other employees with him, the fact remains that he did receive it under conditions in which he was transporting other employees on the employer's business and his employer knew he engaged in that practice. It may be inferred that Thompson and Dreis went to the meeting with Kerns because they considered a suggestion by him that they do so as a command inasmuch as he was their supervisor. The company thereby received an economic benefit because it would pay less traveling expenses to its employees attending the meeting by reason of the arrangement whereby only one employee (Kerns, the owner of the car) would receive mileage, since the employer, in effect, was paying the one employee to bring the others to the meeting. This means that the one driving the car would receive a benefit for supplying transportation to a fellow employee, not from the fellow employee but from his employer. ■ We know of no authority, however, which holds that compensation for the transportation must be paid by the one transported in order to make it transportation for compensation under section 403 of the Vehicle Code. The compensation may be paid by someone other than the rider. (*Malloy* v. *Fong,* 37 Cal.2d 356 [232 P.2d 241]; *Whitechat* v. *Guyette,* 19 Cal.2d 428 [122 P.2d 47].)

■ Even if Kerns had not received mileage there is a sound basis for holding Thompson to be his passenger rather than a guest. It was for the mutual economic benefit of all, Thompson, Kerns, Dreis, and the company, that the three go to the meeting because of the relationship between them and the nature and purpose of the meetings and the regular occurrence thereof. In *Malloy* v. *Fong, supra,* 37 Cal.2d 356, defendant Fong was transporting a child to a defendant church playground, performing the duties of defendant Antisdale, the pastor of the church, when plaintiff was injured as a result of Fong's negligence. We there said (p. 376): "It is immaterial that Fong performed the services gratuitously; he performed those services as the agent of the Presbytery in discharging Antisdale's duty to transport the children to the playground for their recreation period. It is sufficient therefore if Antisdale, the church, or the Presbytery received a benefit from the transportation of plaintiff to the playground.

"The transportation of plaintiff to the playground for the recreation period was not an isolated transaction; it was an integral part of the conduct of the Bible school as one of the normal activities of the San Mateo Presbyterian Church. It is undisputed that the attendance of the children at the Bible school was at least of mutual benefit to the children and the church. The conduct of such schools was authorized by the church laws, and it was to the interest of the church and the Presbytery that parents send their children to the school. Antisdale had a large number of handbills printed urging attendance at the school. The children had recently been released from secular schools for their summer vacation, and many parents wanted their children to spend the time in the open air. It is not an unreasonable inference that the daily open-air recreation periods were designed to induce these parents to send their children to the school and did induce them to do so. Such an inference negatives the theory that no compensation was given for the transportation to such recreation periods. '[B]enefits or considerations other than cash or its equivalent may be "compensation." . . .' " Similarly here it may be inferred that Kerns was acting for the company in transporting Thompson and Dreis to the meeting and that the transportation was for the mutual economic benefit of all concerned. (See *Whitechat* v. *Guyette, supra,* 19 Cal.2d 428.)

■ It may reasonably be inferred that while the benefits received by Kerns, the driver, may not have been the sole motivating influence, they were motivating influences of a substantial character. "Where, . . . the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, the rider is a passenger and the driver is liable for ordinary negligence. (See *Kruzie* v. *Sanders,* 23 Cal.2d 237 [143 P.2d 704]; *Druzanich* v. *Criley,* 19 Cal.2d 439 [122 P.2d 53]; *Whitechat* v. *Guyette,* 19 Cal.2d 428 [122 P.2d 47]; *Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914]; *Kertstetter* v. *Elfman,* 327 Pa. 17 [192 A. 663, 664-666].)" (*Whitmore* v. *French, supra,* 37 Cal.2d 744, 746; see, also, *Kruzie* v. *Sanders,* 23 Cal.2d 237 [143 P.2d 704]; *Humphreys* v. *San Francisco Area Council, Boy Scouts,* 22 Cal.2d 436 [139 P.2d 941].)

The instant case has factors not present in *Druzanich* v. *Criley, supra,* 19 Cal.2d 439, which support plaintiff's position here.

Inasmuch as we have concluded that there was sufficient evidence to show that Thompson was a passenger it is not necessary to consider plaintiff's contention that the evidence is sufficient to show wilful misconduct on the part of Kerns.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.