[L. A. No. 24271. In Bank. May 28, 1957.]

FANNIE M. LAMOREUX, Plaintiff and Appellant, v. SAN DIEGO AND ARIZONA EASTERN RAILWAY COMPANY (a Corporation) et al., Defendants and Appellants; UNION SUGAR COMPANY (a Corporation), Respondent.

620

David M. McGahey for Plaintiff and Appellant.

Horton & Knox and Reginald L. Knox for Defendants and Appellants.

Dickenson, Sattinger & McKee and Richard A. McKee for Respondent.

GIBSON, C. J.—Plaintiff's husband, who was employed by the Union Sugar Company, was killed when his automobile was struck at a railroad crossing by a train operated by San Diego and Arizona Eastern Railway Company. She sued both Union Sugar Company, hereinafter called Employer, and the railway company, hereinafter called Railway, for damages for the wrongful death of her husband.*

Before defendants appeared in this action, plaintiff filed an application for workmen's compensation with the Industrial Accident Commission. Thereafter, Employer, its insurance carrier and plaintiff filed with the commission an agreement in which plaintiff released Employer and its insurance carrier from all claims she had against them on payment of the sum of $3,500. The settlement was approved by the commission.

An amended complaint, which did not name Employer as a defendant, was served on Railway, and it answered, pleading as one of its defenses that the release of Employer discharged

<hr>

*The conductor, engineer and fireman of the train, whose contentions are substantially the same as those of Railway, were also made defendants.

Railway. At the same time, Railway filed a cross-complaint against Employer alleging that it had agreed in writing to indemnify Railway for any losses resulting from the use of the crossing and requesting judgment against Employer in any amount which plaintiff might recover in her action against Railway. A direction for dismissal with prejudice of the action against Employer, signed by plaintiff, was thereafter filed.

The case proceeded to trial on the amended complaint and the cross-complaint. A verdict for $20,000 was rendered in favor of plaintiff against Railway, and a separate verdict in the same amount was rendered in the cross-action in favor of Railway against Employer. Plaintiff has appealed from an order granting a new trial in the main action, and Railway has appealed from an order granting a new trial in the cross-action. Railway also filed a separate notice of appeal from the verdict and judgment in favor of plaintiff in the main action. ■ It appears, however, that no judgment was entered, and, since no appeal lies from the verdict, the attempted appeals from the verdict and judgment are dismissed. (Code Civ. Proc., § 963; *Sokolow* v. *City of Hope*, 41 Cal.2d 668, 669 [262 P.2d 841].)

■ Plaintiff claims that the notice of motion for a new trial was defective, but since no objections were raised when the motion was made and decided the claimed defects in the notice were waived and may not be urged on appeal. (*Secreto* v. *Carlander*, 35 Cal.App.2d 361, 363-364 [95 P.2d 476]; see *Bauer* v. *Helene Curtis Industries, Inc.*, 117 Cal. App.2d 66, 68-69 [254 P.2d 931]; 3 Witkin, California Procedure (1954) 2069-2070; *cf. Starkweather* v. *Eddy*, 196 Cal. 73, 75 [235 P. 734].)

■ The trial court in advising the jury on the doctrine of last clear chance gave the instruction which was recently held erroneous in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 736 [306 P.2d 432], and in accordance with the holding in that case the order granting a new trial in the main action must be affirmed. It appears to be conceded that the granting of a new trial in the main action, if proper, warranted the granting of a new trial in the cross-action.

While the order granting a new trial must be affirmed for the reason stated, it is appropriate for us to pass upon other questions of law presented on appeal which may be necessary to a final determination of the case. (Code Civ. Proc., § 53.)

Defendants contend that the agreement releasing Employer

operated to release Railway as a joint tort feasor, and that the dismissal with prejudice of the action against Employer discharged Railway of all liability to plaintiff.

The ''Compromise and Release Agreement'' executed by Employer, its insurance carrier and plaintiff was authorized by the provisions of sections 5000-5004 of the Labor Code.* The agreement recites that the parties desire to compromise and settle all liability of Employer and its insurance carrier, including the liability of Employer for alleged serious and wilful misconduct, and to obtain approval of the settlement by the Industrial Accident Commission. As part of the agreement there was submitted to the commission an agreed statement of facts, which may be summarized as follows: Plaintiff's husband, who was employed by Union Sugar Company as a carpenter, was killed as a result of a collision between an automobile driven by decedent and a train owned by Railway. On the date of decedent's death he performed services for Employer in the usual course of his employment, and his workday terminated at 11 a. m. He was on his way to his home and was driving his own automobile when the collision occurred at approximately 11:15 a. m. The accident did not occur on the premises or any approach thereto owned by, or under the control of, Employer, and decedent was performing no service incidental to his employment and was not being furnished transportation by Employer at the time of his death. (Railway alleged in its answer and in its cross-complaint that decedent was using the crossing in the course of his employment when the accident occurred which caused his death.) Railway had previously been engaged in raising the grade of its tracks at the crossing where the accident occurred and had dumped considerable loose dirt on the tracks. Decedent's car was stopped by the loose dirt and was then struck by the train. In support of her claim for compensation for wilful misconduct, plaintiff had alleged that Employer had dumped the loose dirt on the tracks, but, after further investigation, she was satisfied that the evidence would not support that allegation.

The agreement provided that, upon approval by the commission, plaintiff would be paid the sum of $3,500 ''in full satisfaction and release of said claims (including any claim for serious and wilful misconduct against said employer) arising

---

*Sections 5000-5004 of the Labor Code govern the matters of release and compromise of workmen's compensation claims and require approval of compromise agreements by the Industrial Accident Commission.

under the Workmen's Compensation, Insurance and Safety Laws of the State of California." Plaintiff further agreed to release and discharge Employer from all claims and causes of action, known or unknown, arising from the injury, and to execute and cause to be filed a dismissal with prejudice of the present action for damages insofar as it related to Employer.

In support of its contention that it is liable, if at all, as a joint tort feasor, Railway relies upon allegations in the original complaint that Employer and Railway were "jointly engaged in raising the grade" at the crossing, and that "they so negligently and carelessly performed such work" that it constituted a trap for motorists using the crossing. The amended complaint omits Employer as a defendant and contains no allegations connecting Employer with the accident.

 Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation. (*Wennerholm* v. *Stanford Univ. Sch. of Medicine*, 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Gaglione* v. *Coolidge*, 134 Cal.App.2d 518, 523 [286 P.2d 568]; *Hicks* v. *Corbett*, 130 Cal.App.2d 87, 89 [278 P.2d 77]; *Lee* v. *Hensley*, 103 Cal.App.2d 697, 709 [230 P.2d 159].) However, a party should be allowed to correct a pleading by omitting an allegation which, it appears, was made as the result of mistake or inadvertence. (*Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 386 [267 P.2d 257]; see *Tognazzi* v. *Wilhelm*, 6 Cal.2d 123, 127 [56 P.2d 1227]; cf. *Jackson* v. *Pacific Gas & Electric Co.*, 95 Cal.App.2d 204, 208-212 [212 P.2d 591] [indicating that great liberality should be exercised under Code Civ. Proc. § 473 in permitting amendments to correct mistakes].) The agreed statement of facts presented to the Industrial Accident Commission recites that plaintiff, after further investigation, became satisfied the evidence would not support the allegation that the loose dirt had been dumped on the tracks by Employer. Section 472 of the Code of Civil Procedure provides that any pleading may be amended once by the party as a matter of right at any time before answer or demurrer is filed. The original complaint was not served on Railway, and no answer or demurrer to that pleading was filed by either Employer or Railway. Under all the circumstances, we are of the view that plaintiff is not bound by the allegations of the original complaint which were omitted from the amended pleading.

As we have seen, Railway has alleged that the decedent was

624

using the crossing in the course of his employment when the accident occurred, and it is plaintiff's position that the accident was within the workmen's compensation provisions of the Labor Code. On the other hand, the compromise agreement recites facts which, although set forth for the purpose of compromise only, seem to show that the injury was not suffered in the course of the decedent's employment, and Railway now argues that the accident was not industrial in character. No testimony has been called to our attention which would indicate that Employer's liability to plaintiff, if any, extended beyond the workmen's compensation provisions, and the facts recited in the compromise agreement do not establish that Employer was negligent or guilty of wilful misconduct or liable to plaintiff on any theory. However, we do not know what evidence will be presented at the new trial, and, to assist the parties and the court, we shall discuss the case, first, on the assumption that the deceased was acting in the course of his employment when he was killed and, second, on the assumption that he was not so acting at that time.

■ The rule that the release of one joint tort feasor releases all the others is intended to prevent double recovery for the injury and is based on the theory that there can be but one compensation for the joint wrong, that each joint tort feasor is responsible for the whole damage, that the cause of action is satisfied once the injured party is paid for his injury by one of the joint tort feasors, and that the receipt by the injured party of any sum, if accepted as payment in satisfaction of the cause of action against one joint tort feasor, is in law full satisfaction as to all joint tort feasors. (*Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 13 Cal.2d 174, 180-181 [88 P.2d 690] ; *Bee* v. *Cooper*, 217 Cal. 96, 99 et seq. [17 P.2d 740] ; *cf. Chetwood* v. *California Nat. Bank*, 113 Cal. 414, 426 [45 P. 704].) ■ However, a release of a cause of action against a wrongdoer is not a release of a separate or distinct cause of action against a successive, independent wrongdoer. (*Ash* v. *Mortensen*, 24 Cal.2d 654, 658-659 [150 P.2d 876] [Malpractice, release of negligent motorist] ; *cf. Duprey* v. *Shane*, 39 Cal.2d 781, 794 [249 P.2d 8] [Ind. Acc. Com. award not bar to malpractice action].)

■ The liability of an insured employer to an employee who is injured during the course of his employment is fundamentally different from that of a third person whose negligent conduct, jointly with that of the employer, resulted in the injury. The third person, of course, is liable under gen-

eral rules of tort law, as applied by a court. An insured employer, however, is not liable for an industrial injury to his employees under general tort principles but only by virtue of the workmen's compensation provisions of the Labor Code, and he is subject to proceedings before the Industrial Accident Commission but not to suit in court for the injury. (Lab. Code, §§ 3600-3603; see *Scott* v. *Industrial Acc. Com.*, 46 Cal. 2d 76, 83 [293 P.2d 18].) The workmen's compensation statutes in this connection contained no exception that would lead to a different result on the ground that the employer had acted jointly with a third party.

█ An employee is entitled to receive the compensation benefits prescribed by statute without jeopardizing his right to proceed against a third party tort feasor. The Labor Code provides that this right of action is not barred by the filing of a claim for compensation, and the decisions clearly show that neither the making of an award by the commission nor the payment of the award by the employer will preclude suit against the third person. (Lab. Code, § 3852 et seq.; *Wallace* v. *Pacific Electric Ry. Co.*, 105 Cal.App. 664, 667-668 [288 P. 834]; see *Thompson* v. *Lacey*, 42 Cal.2d 443, 445 [267 P.2d 1]; *Singleton* v. *Bonnesen*, 131 Cal.App.2d 327, 329-330 [280 P.2d 481].) Here also no exception has been made with respect to an action against a third party whose negligent activity was joint with that of the employer. It seems obvious from these rules that no such bar should arise from the employee's acceptance, in compromise, of a lesser sum than the amount which the commission could award. █ The code in effect provides that the payment of the full amount of workmen's compensation is not to be considered as satisfaction of the third person's tort liability, and the same rule should apply to payment of a compromise award.

█ It follows, therefore, that if it should be found upon the new trial that the deceased was killed while acting in the course of his employment, the portion of the compromise releasing Employer from liability for workmen's compensation would not have the effect of likewise releasing Railway. Further, under this assumption, Railway would not be released by the fact that the compromise agreement, in addition to releasing a workmen's compensation claim, also released Employer from all causes of action arising from the injury. As shown above, an employee who is entitled to workmen's compensation as a result of an industrial injury has no right to proceed in court against his employer if the latter is

insured, and any attempt by him to do so could result only in a judgment for the employer. The release of all causes of action against the employer would, therefore, be immaterial, since it is obvious that, in such a situation, the release would do no more than give the employer what he would be entitled to by operation of law upon a finding that the injury was compensable as an industrial injury.

We shall next consider the case under the second assumption referred to above, namely, that the decedent was not acting in the course of his employment when the injury occurred. Railway contends that, if this is the fact, the liability of Employer is governed by the law of negligence, that Railway and Employer were sued as joint tort feasors and that the release of Employer operated to release Railway as a matter of law under the general rule that the release of one joint tort feasor releases all.

It would seem clear that, regardless of who was responsible for the accident, the settlement of the claim for workmen's compensation was one of the main purposes of the agreement. The statutory liability of an insured employer for workmen's compensation is wholly different in principle from a tort feasor's liability under common law. The liability of a third party who acted jointly with the employer in causing the injury is derived from common law and is dependent upon fault, whereas the employer's liability is imposed by statute regardless of fault and is in the nature of an obligation to provide for insurance against industrial hazard. Apparently because of these factors the amounts of money permitted by statute as compensation awards in industrial accident cases are frequently smaller than the sums allowed by the courts in ordinary actions for comparable injuries.

As we have seen, the common law rule relating to release of a joint tort feasor is based in part upon the theory that the acceptance of a payment in satisfaction of the cause of action against one wrongdoer is deemed full compensation for the injury as to all joint tort feasors, and this basis is not present where the payment is made in settlement of a workmen's compensation claim. The amount to be paid under such a compromise agreement must have been fixed in the light of the fact that the sums which may be allowed for workmen's compensation are limited by law and are usually less than the recoveries in court actions based upon negligence. It would therefore be unrealistic, and most unfair to the injured person, to hold as a matter of law that such a release

payment was accepted as full compensation for the injury, and that as a result there was a release of a negligent third party, unless it appears that the employer was in fact a joint tort feasor with the third party and that there was an intent to release the joint tort feasors. (*Cf. Royal Indemnity Co.* v. *Olmstead*, 193 F.2d 451, 455-456; *Guarisco* v. *Pennsylvania Casualty Co.*, 209 La. 435 [24 So.2d 678, 680]; *Bailey* v. *Delta Electric Light, Power & Mfg. Co.*, 86 Miss. 634 [38 So. 354, 355].) The Royal Indemnity case involved the compromise of an automobile owner's limited liability, under section 402 of the California Vehicle Code, to pay for injuries caused by the negligent operation of his car by a renter. A stipulated judgment against the owner for less than the statutory limit was held not to represent an adjudication of the total amount of damages suffered, but simply a compromise of the owner's limited liability which did not satisfy the plaintiff's claim for the total amount of damages.

Some California decisions which followed the general rule that the release, for a consideration, of one of several asserted joint tort feasors bars an action against another have stated that it is immaterial whether the person who made the payment for the release was or was not legally liable. (*Tompkins* v. *Clay Street R.R. Co.*, 66 Cal. 163, 167-168 [4 P. 1165]; *Leff* v. *Knewbow*, 47 Cal.App.2d 360, 365-366 [117 P.2d 922]; *Blackburn* v. *McCoy*, 1 Cal.App.2d 648, 660 [37 P.2d 153]; *Hawber* v. *Raley*, 92 Cal.App. 701, 705 et seq. [268 P. 943].) These cases are clearly distinguishable, however, because none of them involved the settlement of a claim based upon a special limited liability such as workmen's compensation, the settlement of which does not, as a matter of law, constitute full payment or satisfaction for all the damage suffered.

There is no contention in the present case that Railway and Employer may have been independent, concurrent tort feasors, instead of joint tort feasors, and we will not discuss the effect of this possibility.

Finally, we come to the question whether, under either assumption as to the nature of the accident, the filing of the direction for dismissal of Employer with prejudice, signed by plaintiff, operated as a matter of law to release Railway. The original complaint was superseded by an amended complaint which omitted Employer as a party and, in effect, dismissed it from the main action. (*Brittan* v. *Oakland Bank of Savings*, 112 Cal. 1, 3 [44 P. 339]; *Butchart* v. *Moorhead*,

101 Cal.App. 659, 662 [282 P. 23]; *Schlake* v. *MacConnell*, 69 Cal.App. 207, 209 [230 P. 974].) Employer was not reinstated as a party to the main action when it was named a cross-defendant in Railway's cross-complaint. Accordingly, when the direction for dismissal with prejudice was subsequently filed, there was no cause of action pending against Employer, and a dismissal as to it was unnecessary. Under these circumstances, the direction for the dismissal, standing alone, did not operate as a matter of law to discharge Railway of its liability, if any, to plaintiff.

The orders granting a new trial are affirmed.

Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Schauer, J., and McComb, J., concurred in the judgment.

The petition of plaintiff and appellant for a rehearing was denied June 26, 1957.