285 F.2d 752
 Millicent K. MATLAND, Executrix of the Estate of Carl G. Matland, Deceased, Appellant
v.
UNITED STATES of America, Defendant and Third-Party Plaintiff,
v.
UNITED AIRLINES AND TRANS WORLD AIRLINES, INC., Third-Party Defendant.
 No. 13296.
 United States Court of Appeals Third Circuit.
 Argued December 5, 1960.
 Decided January 10, 1961.
 
 Ella Graubart, Pittsburgh, Pa., for appellant.
 Herbert E. Morris, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., Alan S. Rosenthal, Attorney, Department of Justice, Washington, D. C., on the brief), for appellees.
 Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This appeal has to do with the effect of a release in a Federal Tort Claims case. Two aircraft collided over the Grand Canyon in Arizona on June 30, 1956. One of the passengers who met his death in this collision was Carl G. Matland, 39 years old, a research physicist for Westinghouse Electric Corporation, married and the father of two small children. The Executrix settled the claim against the airlines for a consideration of $75,000 on behalf of the widow and the children. The release stated that for the consideration paid "I do hereby release and forever discharge [United Air Lines, Inc. and Trans World Air Lines, Inc. and their employees] from any and all actions, causes of actions, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore have been or which hereafter may be sustained by me in consequence of an accident which occurred on or about June 30, 1956, Grand Canyon, Arizona * * *."
 
 
 2
 The plaintiff now seeks recovery against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346 (b). Her claim is that the accident was caused by the negligence of employees of the United States at Salt Lake City and Los Angeles in giving directions and failing to give warning to the two airliners whose crash caused this tragedy. The claim is met by the defense that the release given by plaintiff discharged all causes of action arising out of this accident. That the common law rule was that the release of one tortfeasor released all others from claims arising out of the same transaction is too well settled to be doubted. It is stated without qualification in the Restatement of Torts[1] and was reiterated by this Court in Dura Electric Lamp Co. v. Westinghouse Electric Corp., 3 Cir., 1957, 249 F.2d 5. It is true that the rule has been superseded by a statute in some states, including Pennsylvania.[2] And it is also true that adverse criticism has been passed upon the rule.[3] We take it, however, as we find it and not as we would make it.
 
 
 3
 To escape the consequences of the rule applied to this claim the plaintiff urges that the Federal Tort Claims Act creates a new federally created right and that, therefore, the common law rule as to the effect of the release need not apply. The analogy of claims under the F.E.L.A., 45 U.S.C.A. § 51 et seq., is made and strongly urged to apply to this case. The trouble with the argument is that it states the law incorrectly. There is some dispute among the authorities as to whether the effect of the Federal Tort Claims Act was to create a federal right or simply to waive the sovereign's immunity. In a Second Circuit opinion it was stated that "We think it created a new federal right." Fitzgerald v. Pan American World Airways, 2 Cir., 1956, 229 F.2d 499, 501. However, the statement must be taken in the context of its use which was to establish a grant of federal jurisdiction under the "arising under" language of 28 U.S.C. § 1331. Elsewhere, (see e. g., Heuser, Dahelite v. United States: A New Approach to the Federal Tort Claims Act?, 7 Vand.L. Rev. 175 (1954)) it has been stated that a federal right was created because the plaintiff was given a cognizable claim against the United States for which redress could be obtained in the federal courts where formerly no redress was available. Finally, commentators have pointed to recent Supreme Court cases to indicate that new rights were created. See, e. g., Indian Towing Co., Inc. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (United States liable for damages if Coast Guard negligently operated lighthouse). The argument is that plaintiffs have been allowed to assert claims which would not be available against a "private person" because no private person engaged in similar conduct.[4] For our purposes, i. e., a determination of the applicable law, it is unnecessary to become involved in the semantic dispute over the theory of a preexisting right now granted recognition or the creation of a new right. Congress has indicated to us the law to be applied. The statutory language is "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." We quite agree with our brethren of the Ninth Circuit that "This adoption of the proper state law applies not only as to the creation of liability but also as to release from liability." Air Transport Associates, Inc. v. United States, 1955, 221 F.2d 467, 471.[5] This settles the matter so far as a federal claim is concerned.
 
 
 4
 Having reached the conclusion that state law is to be applied, we are now faced with the issue of which state's law to apply. There is no unanimity of opinion among the federal courts on this question. The District of Columbia Circuit has held that the statute means what the language provides, namely, the place of the negligent act or omission controls without regard to the place of injury. Eastern Air Lines v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, certiorari denied sub nom Union Trust Co. v. United States, 1955, 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799.[6] The Ninth Circuit has construed the statutory words to mean simply the standard rule of choice of law, the place of the injury. United States v. Marshall, 1956, 230 F.2d 183. Here again we need not resolve the issue between these last two alternatives, because the state law in each case will lead to the same result.[7]
 
 
 5
 We must now turn to the law of the states possibly to be looked to, namely, Arizona, California and Utah. We find that at the time of the accident these states all followed the common-law rule.[8]
 
 
 6
 As we examine the law of the several states, we do so bearing in mind plaintiff's present contention that there was no negligence on the part of the operators of the airplanes so that the rules pertaining to joint tortfeasors are inapplicable. This contention is, of course, inconsistent with the previous claim made for which $75,000 was collected from the airlines.
 
 
 7
 Arizona applies the common-law rule.[9] In addition, the Supreme Court of Arizona has indicated that unless the court or the legislature has made a contrary pronouncement, the Restatement will be generally followed in that state.[10] The Restatement rule does not rely upon any technical notion of what constitutes a joint tortfeasor.[11] Since the plaintiff asserted the liability of the airlines in a former suit, we think the Supreme Court of Arizona would apply the Restatement rule in this case despite plaintiff's present denial of liability on the part of the airlines.
 
 
 8
 At the time of the accident California also applied the common-law rule.[12] Moreover, the California courts had also held that the releasor is estopped to deny the liability of a releasee.[13]
 
 
 9
 Utah also applies the common-law rule[14] and has rejected arguments relating to the lack of liability of the releasee.[15] Thus we must conclude that under any applicable law the release of the airlines operated to release the United States.
 
 
 10
 One final point. The plaintiff claims that it was not intended that this settlement should have the effect the defendant now contends for. That point was met and discussed in the Dura Electric case.[16] We have nothing to add now to what was said in that opinion.
 
 
 11
 The judgment will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Restatement, Torts § 885(1) (1939), provides:
 "(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document."
 
 
 [2]
 Pa.Stat.Ann., tit. 12, § 2085
 
 
 [3]
 See, e.g., Prosser, Torts 243-246 (1955)
 
 
 [4]
 The statute provides "where the United States, if a private person, would be liable * * *." 28 U.S.C. § 1346(b)
 
 
 [5]
 See also, Rushford v. United States, 2 Cir., 1953, 204 F.2d 831
 
 
 [6]
 Three petitions for certiorari were filed in this case. The issue concerning the meaning of this statutory language was raised in No. 297, 24 U.S.L.Week 3100 (U.S. Oct. 11, 1955)
 The Supreme Court cited this case in a recent case when it stated the problem without answering it. Hess v. United States, 1960, 361 U.S. 314, 318 n. 7, 80 S.Ct. 341, 4 L.Ed.2d 305.
 
 
 [7]
 Compare our opinion in Knecht v. United States, 3 Cir., 1957, 242 F.2d 929, 930
 
 
 [8]
 California has since changed its law by legislative enactment. The statute now provides:
 "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort —
 "(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide * * *" Calif.Civ. Proc. § 877.
 This statute has no application to the present case because it became effective "as to causes of action accruing on or after January 1, 1958." Calif.Civ.Proc. § 880. This accident occurred in June 1956, and the release was executed in June 1957.
 
 
 [9]
 Smith v. Pinner, 1948, 68 Ariz. 115, 201 P.2d 741; Fagerberg v. Phoenix Flour Mills Co., 1937, 50 Ariz. 227, 71 P.2d 1022
 
 
 [10]
 "This court has consistently held that it will generally follow the Restatement of Law unless a different rule has been pronounced by the court in prior decisions or by legislative enactment." Rodriquez v. Terry, 1955, 79 Ariz. 348, 290 P.2d 248, 249
 
 
 [11]
 See Restatement, Torts § 885, commentc (1939).
 
 
 [12]
 Pellett v. Sonotone Corp., 1945, 26 Cal. 2d 705, 160 P.2d 783, 160 A.L.R. 863; Bee v. Cooper, 1932, 217 Cal. 96, 17 P. 2d 740
 Other California cases have involved the problem of whether the alleged tortfeasors were "joint" and the court has answered it by finding that the duties and violation thereof by one of the parties differed from that of the other. Lamoreux v. San Diego & Arizona Eastern Ry. Co., 1957, 48 Cal.2d 617, 311 P.2d 1 (release to employer for workmen's compensation does not release third party tortfeasor); Gerald v. San Francisco Unified School Dist., 1953, 121 Cal.App. 2d 761, 264 P.2d 90 (release of driver does not release school district's liability for allowing extensive and tiring fraternity initiation); Alexander v. Hammarberg, 1951, 103 Cal.App.2d 872, 230 P.2d 399 (judgment against builder does not release architect from claim for professional negligence); Ash v. Mortensen, 1944, 24 Cal.2d 654, 150 P.2d 876 (release of driver does not release doctor from claim for malpractice in treating injury).
 Compare the language of the Restatement in note 1 supra.
 
 
 [13]
 Tompkins v. Clay-Street Hill R. Co., 1884, 66 Cal. 163, 4 P. 1165; Leff v. Knewbow, 1941, 47 Cal.App.2d 360, 117 P.2d 922, distinguished in Lamoreux v. San Diego & Arizona Eastern Ry. Co., 1957, 48 Cal.2d 617, 311 P.2d 1
 
 
 [14]
 United States v. First Sec. Bank of Utah, 10 Cir., 1953, 208 F.2d 424, 42 A.L.R.2d 951; Green v. Lang Co., Inc., 1949, 115 Utah 528, 206 P.2d 626. It has been held that Utah Code Ann. § 15-4-4 (1953) does not change the common-law rule. United States v. First Sec. Bank of Utah, supra
 
 
 [15]
 Green v. Lang Co., Inc., 1949, 115 Utah 528, 206 P.2d 626
 
 
 [16]
 Dura Electric Lamp Co. v. Westinghouse Electric Corp., 3 Cir., 1957, 249 F.2d 5